## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOLD RESERVE INC.,**<br>**400 3rd Avenue SW, Suite 3700**<br>**Calgary, Alberta T2P 4H2**<br>**Canada,**<br><br>      **Petitioner,**<br><br>      **v.**<br><br>**BOLIVARIAN REPUBLIC OF**<br>**VENEZUELA,**<br>**Ministerio del Poder Popular para**<br>**Relaciones Exteriores**<br>**Oficina de Relaciones Consulares,**<br>**Avenida Urdaneta**<br>**Esquina de "Carmelitas" a "Puente**<br>**Llaguno"**<br>**Edificio anexo a la Torre "MRE"**<br>**Caracas, 1010**<br>**Republica Bolivariana de Venezuela,**<br><br>      **Respondent.** | **Civil Action No. 1:14-cv-2014** |

## PETITION TO CONFIRM ARBITRAL AWARD

Petitioner Gold Reserve Inc. ("Petitioner" or "Gold Reserve"), by and through its undersigned counsel, hereby petitions this Court for an order pursuant to 9 U.S.C. § 207: (i) confirming and recognizing the final arbitral award (the "Award") rendered on September 22, 2014, in an arbitration (the "Arbitration") between Petitioner and Respondent the Bolivarian Republic of Venezuela ("Respondent" or "Venezuela") pursuant to the International Centre for Settlement of Investment Disputes (Additional Facility) Rules (the "ICSID Additional Facility Rules"), and the Arbitration (Additional Facility) Rules attached thereto;[1] (ii) entering judgment

---

[1] The Award is captioned ICSID Case No. ARB(AF)/09/1. A duly-certified copy of the Award is attached as Exhibit 1 to the Declaration of Matthew H. Kirtland ("Kirtland Decl.") filed on today's date.

in Petitioner's favor against Respondent in the amount of the Award with the pre- and post-award interest and legal fees and costs awarded therein and as authorized by law, plus the costs of this proceeding; and (iii) awarding Petitioner such other and further relief as this Court determines is just and proper.

### Parties, Jurisdiction and Venue

1.      Petitioner brings this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, to confirm a duly-rendered arbitration award issued in its favor against Respondent.

2.      Petitioner is a mining company incorporated under the laws of the Province of Alberta, Canada.[2]  It is listed and publicly traded in Canada on the Toronto Stock Exchange (TSX Venture Exchange) and in the United States on the OTCQB.  Petitioner's registered address in Canada is 400 3rd Avenue SW, Suite 3700, Calgary, Alberta T2P 4H2.  Petitioner's registered address in the United States is 926 West Sprague Avenue, Suite 200, Spokane, Washington 99201.

3.      Respondent is the Bolivarian Republic of Venezuela and is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-1611.

4.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1330(a), as Respondent is not entitled to sovereign immunity in connection with the cause of action set forth herein.  Specifically, Respondent is not immune per 28 U.S.C. §

---

[2] Petitioner was incorporated under the laws of the Yukon Territory, Canada as of the date the Arbitration was initiated (October 21, 2009).

1605(a)(6)(B), which provides that a foreign state does not enjoy sovereign immunity in any case brought to confirm an arbitration award that "is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards."  The Award is subject to the New York Convention, which is in force in the United States.  Respondent also is not immune per 28 U.S.C. § 1605(a)(1) because its agreement to arbitrate, *see infra* ¶¶ 7-16, reflects an implied waiver of immunity with respect to actions to enforce the resulting award.   Subject matter jurisdiction is also conferred pursuant to 9 U.S.C. § 203.

5.      Personal jurisdiction over Respondent is conferred by 28 U.S.C. § 1330(b).

6.      Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## The Arbitration Agreement

**A.      Respondent's Consent to Arbitrate**

7.      Respondent consented to arbitrate its disputes with Petitioner in the bilateral investment treaty, "Agreement between the Government of Canada and the Government of Venezuela for the Promotion and Protection of Investments," which entered into force on January 28, 1998 (the "BIT").[3]  The arbitration agreement between the Petitioner and Respondent is contained in Article XII of the BIT.

8.      Respondent signed the BIT on July 1, 1996, and it entered into force in Venezuela on January 28, 1998.  Respondent is defined in the BIT as a "Contracting Party."  *See* BIT at p. 1 ("The Government of Canada and the Government of the Republic of Venezuela, hereinafter referred to as the 'Contracting Parties.'").

---

[3] A true and correct copy of the BIT is attached as Exhibit 2 to the Kirtland Decl.

9.      Article XII(5) of the BIT provides:

Each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration in accordance with the provisions of this Article.

10.     Petitioner's claim was submitted to arbitration in accordance with the provisions of Article XII of the BIT.  Accordingly, Respondent provided its written consent to the Arbitration in Article XII(5) of the BIT.

**B.      Petitioner's Consent to Arbitrate**

11.     Canada signed the BIT on July 1, 1996, and it entered into force in Canada on January 28, 1998.  Canada is defined in the BIT as the other "Contracting Party."  *See* BIT at p. 1.

12.     According to Article I(g)(ii) of the BIT, in the case of Canada, an "investor" means, for non-natural persons, "any enterprise incorporated or duly constituted in accordance with applicable laws of Canada, who makes the investment in the territory of Venezuela and who does not possess the citizenship of Venezuela." BIT Article I(g)(ii); *see also* Award ¶ 248. Article I(a)(i) of the BIT defines an "enterprise" in pertinent part to include "any entity constituted or organized under applicable law…, including any corporation…."

13.     As determined in the Award, Petitioner satisfied both elements of the definition of "investor" under the BIT and therefore the arbitration tribunal (the "Tribunal") had jurisdiction to hear Petitioner's claim:

In conclusion, it is the Tribunal's view that Claimant satisfies the definition of investor both as a Canadian incorporated company and as a company that made an investment in Venezuela. The Tribunal therefore has jurisdiction to hear the claim.

Award ¶ 272; *see also id.* ¶¶ 222-271 (setting out the details of the parties' contentions and the Tribunal's analysis and findings).

14.     As an "investor" under the BIT, Petitioner's investment-based claims against Respondent were properly submitted to arbitration in accordance with the BIT.

15.     Paragraphs (2) and (4)(b) of Article XII of the BIT provide that an "investor" may elect to submit a dispute for resolution through arbitration under the "Additional Facility Rules of ICSID, provided that either the disputing Contracting Party or the Contracting Party of the investor, but not both, is a party to the ICSID Convention."  On the date Petitioner initiated the Arbitration, Venezuela was a party to the ICSID Convention but Canada ("the Contracting Party of the investor," i.e., Petitioner) was not.  Accordingly, submission of the Arbitration under the ICSID Additional Facility Rules was proper.

16.     Article XII(3) of the BIT provides in pertinent part that an "investor" may submit a dispute to arbitration if it has consented in writing thereto, waived its right to proceed in specified alternative forums and initiated arbitration within three years of knowledge of both the alleged breach and the loss or damage resulting therefrom.[4]  Petitioner satisfied each of these provisions.  It provided its written consent in its Request for Arbitration, and attached to its Request for Arbitration a separate consent and a separate waiver.  *See* Request for Arbitration ¶ 88.[5]  Petitioner initiated the Arbitration within the specified three-year time period.  *See id.* ¶ 91.

---

[4] *See* BIT, Article XII(3) ("An investor may submit a dispute as referred to in paragraph (1) to arbitration in accordance with paragraph (4) only if:  (a) the investor has consented in writing thereto; (b) the investor has waived its right to initiate or continue any other proceedings in relation to the measure that is alleged to be in breach of this Agreement before the courts or tribunals of the Contracting Party concerned or in a dispute settlement procedure of any kind; (c) if the matter involves taxation, the conditions specified in paragraph 14 of this Article have been fulfilled; and (d) not more than three years have elapsed from the date on which the investor first acquired, or should have first acquired, knowledge of the alleged breach and knowledge that the investor has incurred loss or damage.").  As the Arbitration did not concern taxation, the conditions specified in paragraph 14 of Article XII did not apply.

[5] A true and correct copy of Petitioner's Request for Arbitration is attached as Exhibit 3 to the Kirtland Decl.  True and correct copies of the consent and waiver attached to the Request are attached as Exhibit 4 to the Kirtland Decl.

## Summary of the Underlying Dispute

17.     Petitioner's claims in the Arbitration arose out of *inter alia* Respondent's failure to accord fair and equitable treatment ("FET") to Petitioner's sizable investment in Venezuela in violation of the BIT, as a result of Respondent's wrongful revocation of permits and rescission of licenses regarding mining concessions and rights held by Petitioner.

18.     Petitioner is engaged in the business of acquiring, exploring, developing and putting into production mining projects.  In 1992, it began developing in Venezuela what was known as the Brisas gold and copper project (the "Brisas Project").  The Brisas deposit was one of the largest undeveloped gold/copper deposits in the world.  From 1992 to 2008, Petitioner invested close to $300 million in developing the Brisas Project into a world-class mining project. *See* Request for Arbitration ¶ 3.

19.     In 2000, Petitioner also acquired rights to develop a separate property located in Venezuela. This property was many times larger than the Brisas property, was surrounded by several other properties already being actively mined, and was a valuable property with highly promising geological characteristics.  *Id.* ¶ 4.

20.     After enjoying years of support from the relevant Venezuelan authorities in developing its mining properties, investing hundreds of millions of dollars in exploration and development, and successfully developing the Brisas Project in particular to the point of production, fully in accord with all applicable laws, regulations, licenses and permits, Petitioner's investments were unlawfully and effectively taken from it as a result of and by the decisions and actions taken, directed, and supported by the administration of the then-President of Venezuela, Hugo Chávez.  *Id.* ¶ 5.

## The Arbitration

21.     Petitioner commenced the Arbitration on October 21, 2009, by submitting its Request for Arbitration to ICSID.  *See* Award ¶ 29.[6]

22.     Petitioner claimed that Respondent's actions breached its obligations under various articles of the BIT.  Petitioner requested compensation plus pre- and post-award interest. *See id.* ¶ 5.  Petitioner also requested an award of compensation on such other basis as the Tribunal deemed to be warranted, and the legal fees and costs it incurred in the arbitral proceedings.  *See id.*

23.     On October 23, 2009, ICSID transmitted copies of the Request for Arbitration, its accompanying documentation and Claimant's letter dated October 21, 2009, to Respondent.  *Id.* ¶ 30.

24.     On November 9, 2009, pursuant to Article 4(5) of the ICSID Additional Facility Rules, the Secretary-General of ICSID registered the Request for Arbitration and, on the same day, in accordance with the Arbitration (Additional Facility) Rules, dispatched to the parties the Notice of Registration, inviting them to proceed with the constitution of the Tribunal.  *Id.* ¶ 31.

25.     The selection of the arbitral Tribunal was completed on March 9, 2010.  The Tribunal consisted of Professor Piero Bernardini as the presiding arbitrator (appointed by

---

[6] Article XII(2) of the BIT provides that:  "If a dispute has not been settled amicably within a period of six months from the date on which it is initiated, it may be submitted by the investor to arbitration in accordance with paragraph (4) [of Article XII]."  Petitioner complied with this provision by giving written notice of the dispute to Respondent by letter dated April 17, 2009, and requesting amicable resolution therein.  A further letter was sent by Petitioner to Respondent on August 19, 2009.  Respondent did not respond to either letter.  Accordingly, as of the date Petitioner initiated the arbitration (October 21, 2009), six months had elapsed without an amicable resolution of the dispute.  True and correct copies of both letters and their English translations are attached as Exhibit 5 to the Kirtland Decl.

agreement of the parties), Professor David A.R. Williams QC (appointed by Petitioner), and Professor Pierre-Marie Dupuy (appointed by Respondent). *See id.* ¶¶ 33-40.[7]

26.    Respondent was represented by counsel throughout the Arbitration. It was originally represented by Ronald E.M. Goodman, Melida Hodgson and Alberto Wray of Foley Hoag LLP (Washington, D.C.). *See id.* ¶ 2. Their authority was revoked by letter dated May 10, 2011. *Id.* Respondent was then represented by the Attorney-General of Venezuela; Venezuelan counsel, Antonio Guerrero and Luis Torres Darias (appointed on February 22, 2011); and Paolo di Rosa and Gaela Gehring Flores of Arnold & Porter LLP (as of May 12, 2011). *Id.* On September 27, 2011, Respondent informed the Tribunal that Foley Hoag LLP had been reappointed to represent Respondent, and on September 28, 2011, Respondent revoked the authority of the Venezuelan counsel (Mr. Guerrero and Mr. Torres Darias). *Id.* As of the date of the Award, Respondent also was represented by Manuel Enrique Galindo Ballesteros, *Procurador General (E)* of Venezuela. *Id.*

27.    The place of the Arbitration was Paris, France.

28.    By agreement of the parties, the First Session of the Tribunal concerning the procedural rules and the agenda of the Arbitration was held on April 23, 2010, via teleconference. *See id.* ¶¶ 41-43.

29.    Between September 2010 and December 2011, the parties exchanged extensive written pleadings, including fact witness statements and expert reports. *See id.* ¶¶ 44-64. The parties also engaged in written discovery between November 2010 and November 2011, with both parties submitting requests for production of documents. *See id.* ¶¶ 85-96, 104-111.

---

[7] The Tribunal also had a Secretary, first Mrs. Katia Yannaca-Small, then Ms. Janet Whittaker and finally Ms. Ann Catherine Kettlewell. *Id.* ¶ 40.

30.     The Tribunal held a hearing on jurisdiction and the merits in Washington, D.C., on February 13-17, 2012, during which fact and expert witnesses for both parties testified.  *See id.* ¶ 112.

31.     The parties engaged in extensive further submissions during the period from February 2012 through August 2013.  *See id.* ¶¶ 113-199.

32.     The Tribunal held a further hearing in Paris, France, on October 15-16, 2013.  *See id.* ¶¶ 200-205.  Following this hearing, the parties made further written submissions through December 2013.  *See id.* ¶¶ 206-212.

33.     During the period from March to May 2014, the parties made submissions on the question of legal fees and costs, both as to entitlement and quantum.  *See id.* ¶¶ 213-220.

34.     On 23 July 2014, the Tribunal declared the arbitration proceedings closed in accordance with Article 44 of the Arbitration (Additional Facility) Rules.  *Id.* ¶ 221.

35.     The Tribunal issued the Award on September 22, 2014.  The Tribunal's ruling was unanimous.

### The Arbitral Award

36.     The Award is 225 pages and consists of 863 separate, numbered paragraphs.

37.     On liability, the Tribunal found:  "Venezuela breached Article II(2) of the BIT by failing to accord fair and equitable treatment to Gold Reserve's investment."  *Id.* ¶ 863(i); *see also id.* ¶¶ 537-615 (setting out the details of the parties' contentions and Tribunal's analysis and findings).  Further, the Tribunal stated:  "The number, variety and seriousness of the breaches make the FET violation by Respondent particularly egregious. The compensation due to Claimant for such breaches should reflect the seriousness of the violation."  *Id.* ¶ 615.

38.     On the measure of compensation, the Tribunal ordered:  "Venezuela shall pay Gold Reserve compensation for the breach of the BIT in the sum of US$ 713,032,000, increased by interest from 14 April 2008 to the date of this Award at the United States Government Treasury Bill Rate, compounded annually."  *Id.* ¶ 863(ii); *see also id.* ¶¶ 670-849 (setting out the details of the parties' contentions and Tribunal's analysis and findings).  The Tribunal further determined:  "Post-award interest shall run on the total amount awarded under (ii) above at a rate of LIBOR plus 2%, compounded annually, from the date of the Award until payment in full."  *Id.* ¶ 863(iii); *see also id.* ¶¶ 850-856.

39.     The interest awarded by the Tribunal from April 14, 2008 through the date of the Award (September 22, 2014) equates to $22,299,576.  A table setting out the details of this calculation is attached as Exhibit 6 to the Kirtland Decl.

40.     The Tribunal also awarded Respondent $5 million of its incurred legal fees and costs, *see* Award ¶863(iv), stating as follows:

> In view of the outcome of the case, substantially in Claimant's favour, the difficulty of issues pertaining to damages evaluation and the material disproportion between the Parties' respective costs, the Tribunal considers appropriate that Respondent reimburse Claimant for part of the latter's fees and costs in the amount of US$ 5 million, all other fees and costs incurred by each Party to be borne by such Party, except that the Parties shall bear equally all costs incurred for the Tribunal's and ICSID's fees and costs.

*Id.* ¶ 862; *see also id.* ¶¶ 857-861.

41.     The Award is final and binding.  Article XII(10) of the BIT expressly states that: "An award of arbitration shall be final and binding.  Each Contracting Party shall provide for the enforcement of an award in its territory."  Further, Article 52(4) of the Arbitration (Additional Facility) Rules expressly states that: "The award shall be final and binding on the parties. The

parties waive any time limits for the rendering of the award which may be provided for by the law of the country where the award is made."[8]

42.     Petitioner has demanded that Respondent satisfy the Award.  Despite this, Respondent has not made any payment to Petitioner under the Award.

## CAUSE OF ACTION

43.     Petitioner repeats and re-allege the allegations in paragraphs 1 through 42 as if set forth fully herein.

44.     The Award is subject to the New York Convention, which applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcements of such awards are sought."  New York Convention, Article I(1); see also 9 U.S.C. § 201 ("The [New York Convention] shall be enforced in United States courts in accordance with this chapter.").

45.     The arbitration agreement described above at paragraphs 7 through 16 constitutes "an agreement in writing" within the meaning of Article II(2) of the New York Convention.  *See* BIT, Article XII(6)(a)(ii) ("The consent given under paragraph (5), together with either the consent given under paragraph (3), or the consents given under paragraph (12), shall satisfy the requirements for:  (ii) an 'agreement in writing' for purposes of Article II of the [New York Convention].").

46.     The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

---

[8] As permitted by Article 56 of the Arbitration (Additional Facility) Rules, both parties have submitted requests to the Tribunal for correction of certain alleged "clerical, arithmetical or similar errors" in the Award.  The Tribunal has not yet ruled on these requests.  The pendency of these requests does not render the Award non-final or non-binding.

47.     Pursuant to Article 20(3) of the Arbitration (Additional Facility) Rules, the Award was made at the place of arbitration:  Paris, France.

48.     France and the United States are each signatories to the New York Convention (as are Venezuela and Canada).

49.     The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

50.     On information and belief, Respondent and its instrumentalities and agents maintain assets in the United States, and those assets are and have been used for commercial purposes in the United States and may be executed upon in satisfaction of any judgment entered in Petitioner's favor herein.

51.     Section 207 of the FAA provides that:  "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."  9 U.S.C. §207; *see also Argentine Republic v. National Grid Plc*, 637 F.3d 365, 369 (D.C. Cir. 2011) ("Confirmation proceedings under the Convention are summary in nature, and the court must grant the confirmation unless it finds that the arbitration suffers from one of the defects listed in the Convention.").  The party opposing enforcement of an award has the burden of proof on the existence of any defense under the New York Convention, and this "burden is a heavy one, as the showing required to avoid summary confirmance is high."  *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2nd Cir. 2007).

52.     Here, none of the grounds for refusal or deferral of the Award specified in the New York Convention is present.  Accordingly, pursuant to 9 U.S.C. § 207 and the New York Convention, the Award is required to be confirmed.

WHEREFORE, Petitioner prays:

(a)        that the Court enter an order pursuant to 9 U.S.C. § 207 confirming the Award against Respondent;

(b)        that, on the basis of the confirmed Award, the Court enter judgment that Respondent is liable to Petitioner in the amount of $713,032,000, plus (i) pre-award interest from 14 April 2008 to September 22, 2014 (the date of the Award) at the United States Government Treasury Bill Rate, compounded annually, in the amount of $22,299,576, (ii) post-award interest on the total amount awarded, inclusive of pre-award interest, at a rate of LIBOR plus 2%, compounded annually, from September 22, 2014, until payment in full; and (iii) the $5 million in legal fees and costs awarded by the Tribunal;

(c)        that Petitioner be awarded the costs of this proceeding, in amount to be quantified; and

(d)        that Petitioner be awarded such other and further relief as this Court determines is just and proper.

A proposed order is attached.

November 26, 2014                                  Respectfully submitted,


                                                   /s/ Matthew H. Kirtland
                                                   Matthew H. Kirtland (D.C. Bar # 456006)
                                                   matthew.kirtland@nortonrosefulbright.com
                                                   Caroline M. Mew (D.C. Bar #467354)
                                                   caroline.mew@nortonrosefulbright.com
                                                   FULBRIGHT & JAWORSKI LLP
                                                   801 Pennsylvania Avenue, NW
                                                   Washington, D.C. 20004-2623
                                                   Telephone:     (202) 662-4659
                                                   Facsimile:     (202) 662-4643

                                                   *Attorneys for Petitioner Gold Reserve Inc.*