**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GOLD RESERVE INC.,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:14-cv-02014-JEB** |
| ) | |
| **BOLIVARIAN REPUBLIC OF** ) | |
| **VENEZUELA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**PETITIONER'S SUR-REPLY IN OPPOSITION TO**
**RESPONDENT'S MOTION TO DISMISS OR TO STAY ENFORCEMENT**

# TABLE OF CONTENTS

**Page**

I.      VENEZUELA WAIVED ITS ARGUMENT THAT DAMAGES SHOULD BE
        AWARDED TO THE BRISAS COMPANY RATHER THAN GOLD RESERVE ......... 3

II.     VENEZUELA HAS NO VALID BASIS UNDER THE NEW YORK
        CONVENTION TO CONTEST THE DAMAGE AWARD TO GOLD
        RESERVE ................................................................................................................... 8

III.    THE TRIBUNAL PROPERLY AWARDED DAMAGES TO GOLD RESERVE ......... 12

        A.      Venezuela's Tax Argument Is Specious ................................................. 14

IV.     A STAY OF ENFORCEMENT IS NOT WARRANTED, BUT IF A STAY IS
        GRANTED, VENEZUELA SHOULD BE ORDERED TO POST SUITABLE
        SECURITY ................................................................................................................ 16

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAOT Foreign Economic Assoc. (VO) Technostroyexport v. Int'l Development
   & Trade Services, Inc.,
   139 F.3d 908, 1998 U.S. App. LEXIS 5610 (2d Cir. 1998) ..................................................3, 4

AO Techsnabexport v. Globe Nuclear Services & Supply GNSS, Ltd.,
   404 Fed. Appx. 793 (4th Cir. 2010)........................................................................................4

BCB Holdings Ltd. v. Gov't of Belize,
   No. 14-1123, 2015 U.S. Dist. LEXIS 81824 (D.D.C. June 24, 2015)....................................10

Belize Soc. Dev. Ltd. v. Gov't of Belize,
   668 F.3d 724 (D.C. Cir. 2012)...............................................................................................14

Belize Social Development Ltd. v. Gov't of Belize,
   5 F. Supp. 3d 25, 43 (D.D.C. 2013), aff'd, 2015 U.S. App. LEXIS 12531
   (D.C. Cir. July 21, 2015) .......................................................................................................10

*Brotherhood of Railroad Trainmen v. Chicago, Milwaukee, St. Paul & Pac. Railroad Co.,
   380 F.2d 605 (D.C. Cir. 1967)................................................................................................3

Caribbean Trading & Fidelity Corp. v. Nigerian Nat. Petroleum Corp.,
   No. 90 Civ. 4169, 1990 U.S. Dist. LEXIS 17198 (S.D.N.Y. Dec. 18, 1990)..........................19

Chemical Overseas Holdings, Inc. v. Republica Oriental del Uruguay,
   371 F. Supp. 2d 400 (S.D.N.Y. 2005).....................................................................................5

*Chevron Corp. v. Republic of Ecuador,
   No. 13-7103, 2015 U.S. App. LEXIS 13528 (D.C. Cir. Aug. 4, 2015)........................9, 11, 14

DRC, Inc. v. Rep. of Honduras,
   774 F. Supp. 2d 66 (D.D.C. 2011)..........................................................................................18

DRC, Inc. v. Rep. of Honduras,
   999 F. Supp. 2d 1 (D.D.C. 2012)...........................................................................................18

*Europcar Italia v. Maiellano Tours, Inc.,
   156 F.3d 310 (2d Cir. 1998).............................................................................................4, 17

Hutchins v. Dist. of Columbia,
   188 F.3d 531 (D.C. Cir. 1999)...............................................................................................8

International Ins. Co. v. Caja Nacional de Ahorro y Seguro,
   293 F.3d 392 (7th Cir. 2002) .................................................................................................18

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) ...............................................................................................11

*Kreiter v. Lufthansa German Airlines, Inc.*,
    558 F.2d 966 (9th Cir. 1977) .................................................................................................3

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iraq
    v. Cubic Def. Sys., Inc.*,
    665 F.3d 1091 (9th Cir. 2011) .......................................................................................10, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985).............................................................................................................11

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du
    Papier (RAKTA)*,
    508 F.2d 969 (2d Cir. 1974)....................................................................................9, 11, 12

*Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro y Seguro*,
    No. 96 Civ. 2301, 1997 U.S. Dist. LEXIS 7221 (S.D.N.Y. May 23, 1997).....................18, 19

*Slaney v. Int'l Amateur Athletic Federation*,
    244 F.3d 580 (7th Cir. 2001) ................................................................................................4

*Steel Corp. of the Philippines v. Int'l Steel Servs., Inc.*,
    354 Fed. Appx. 689 (3d Cir. Nov. 19, 2009) ........................................................................10

*Tahan v. Hodgson*,
    662 F.2d 862 (D.C. Cir. 1981) ..............................................................................................3

*Tamimi Global Co. Ltd. v. Kellogg Brown & Root LLC*,
    No. 14-11-0585, 2011 U.S. Dist. LEXIS 50873 (S.D. Tex. May 12, 2011)...........................10

*Termorio S.A. E.S.P. v. Electranta S.P.*,
    487 F.3d 928 (D.C. Cir. 2007) ............................................................................................10

## Rules and Statutes

9 U.S.C. § 207.................................................................................................................................19

## Other Authorities

United States Convention on the Recognitions and Enforcement of Foreign
    Arbitral Awards ................................................................................ 2, 4-11, 13, 15

Pursuant to the Court's August 10, 2015 Order, Petitioner Gold Reserve Inc. ("Petitioner" or "Gold Reserve") hereby files this sur-reply to the Reply in Support of Motion to Dismiss Petition and to Deny Recognition of Arbitral Award, or in the Alternative, to Stay Enforcement ("Reply"), filed by Respondent Bolivarian Republic of Venezuela ("Respondent" or "Venezuela") on July 15, 2015 (ECF 24-29).

Venezuela devotes ten pages in its reply brief to substantially expand its contention—raised only in conclusory fashion in its opening brief—that the Award should not be recognized because the arbitral Tribunal should have awarded damages to the Brisas Company[1] and not to Gold Reserve.[2]  Venezuela relies on three new expert opinions in support of this argument.  *See* Reply at 4-13; D.E. 25-27.

Tellingly, Venezuela offered none of this expert testimony or concomitant analysis to the Tribunal during the arbitration proceedings.  Rather, Venezuela made only passing reference to this issue during the arbitration before abandoning it altogether.  This is because, as detailed below, this point is fundamentally incorrect, at all levels.  If it had any merit—and it does not—it would have been properly raised and fully briefed in the arbitration, not introduced in a reply brief in these summary confirmation proceedings.  Such procedural machinations underscore the frivolous nature of this particular argument and all of the grounds Venezuela has raised in its attempt to avoid enforcement of the Award.

In support of its alternative motion for stay, Venezuela contends that the Court of Appeal of Luxembourg has granted Venezuela's motion to stay enforcement of the Award in that

---

[1] Gold Reserve referred to the Brisas Company as "CABC" in its opening brief, but in the interest of consistency with Respondent's pleadings, will refer to the company as the Brisas Company herein.

[2] *Compare* Venezuela's Motion to Dismiss Petition or Stay Enforcement (D.E. 19) at 23-24 *with* Venezuela's Reply in Support of Its Motion to Dismiss or to Stay Enforcement (D.E. 24) at 4-13.

country, and urges this Court to follow the Luxembourg court's lead. *See id.* at 24.  This argument too is entirely wrong.  The Luxembourg court in fact did not stay enforcement of the Award, but rather stayed Venezuela's appeal of the judgment allowing enforcement in Luxembourg.  The Award thus remains enforceable in Luxembourg.  As importantly, the Award remains enforceable in France, the jurisdiction in which the Award was issued, given that the French courts rejected Venezuela's attempt to stay enforcement.

Venezuela also argues that it should not be required to post security if its request for stay is granted, baldly asserting that because it is a sovereign state, "there is little risk of non-payment." *Id.* at 25.  This argument is equally unavailing.  Sovereigns are treated no differently than private parties under Article VI of the Convention, and Venezuela should not be able to evade posting the security contemplated by Article VI simply on the grounds that it is a sovereign state.  This is particularly the case here, where Venezuela has shown the opposite of there being "little risk of non-payment."

In sum, Venezuela has fallen far short of meeting its heavy burden to advance proof of grounds for non-enforcement of the Award under the New York Convention in any of its motion papers.  For the reasons discussed below, as well as in Gold Reserve's Petition to Confirm (D.E. 1) and Opposition to Respondent's Motion to Dismiss or to Stay Enforcement (D.E. 22), Venezuela's motions should be denied and the Award should be confirmed.[3]

---

[3] This sur-reply is limited to addressing the new points and arguments made in Venezuela's reply brief.  It should be briefly noted, however, that Venezuela's other arguments remain equally baseless.  Specifically, Venezuela's reply does not show that the Tribunal lacked jurisdiction over this dispute. *See* Reply at 2-3.  As previously stated, the Tribunal properly found, on the evidence before it, that Gold Reserve was a Canadian investor entitled to the protections of the BIT. *See* Opp. to Resp. Mot. to Dismiss or to Stay Enforcement ("Opp.") (D.E. 22), at 9-16.  Venezuela does not dispute this or that the parties agreed that the Tribunal would determine its own jurisdiction, and that the Tribunal's findings are therefore entitled to deference. *See id.* at 4-16.  With respect to its punitive damages argument, *see* Reply at 13-15, as previously explained this argument has absolutely no basis in fact and is contradicted by the

**I.    VENEZUELA WAIVED ITS ARGUMENT THAT DAMAGES SHOULD BE
AWARDED TO THE BRISAS COMPANY RATHER THAN GOLD RESERVE**

The principal argument in Venezuela's reply brief is that the Award should not be

recognized because the Tribunal awarded damages to Gold Reserve rather than its wholly-owned

subsidiary, the Brisas Company.  *See* Reply at 3-13.  This argument is not available to Venezuela

and, even if it were, is not a ground for non-enforcement under the New York Convention.

Furthermore, this argument is based on a false factual predicate and erroneous reading of the

investment treaty under which Gold Reserve brought its claims against Venezuela.

"It is imperative to an efficient and fair administration of justice that a litigant may not

withhold his objections, await the outcome, and then complain that he was denied his rights if he

does not approve the resulting decision."  *Brotherhood of Railroad Trainmen v. Chicago,*

*Milwaukee, St. Paul & Pac. Railroad Co.*, 380 F.2d 605, 608-609 (D.C. Cir. 1967); *see also*

*Tahan v. Hodgson*, 662 F.2d 862, 867 (D.C. Cir. 1981) (criticizing defendant for raising public

policy arguments against enforcement of Israeli court award that were not advanced in the Israeli

court proceedings); *Kreiter v. Lufthansa German Airlines, Inc.*, 558 F.2d 966, 968 (9th Cir.

1977) ("'Defects in proceedings prior to or during arbitration may be waived by a party's

acquiescence in the arbitration with knowledge of the defect.'") (citation omitted).

This longstanding principle applies with equal force in international arbitration

proceedings.  One instructive case is the Second Circuit's decision in *AAOT Foreign Economic*

---

clear ruling of the Tribunal.  *See* Opp. at 26-31.  As importantly, Venezuela makes no effort to explain
how this damage award implicates the United States' "most basic notions of morality and justice" so as to
be properly challenged under the "public policy" provision of Article V(2)(b) of the Convention.  *See id.*
at 26-27; *see also infra* at 10-12.  Venezuela reiterates its complaint that it was somehow denied due
process during the arbitration proceeding, *see* Reply at 15-18, but continues to ignore that, as previously
explained, this argument is flatly contradicted by the record and, in any event, would fail to prove a valid
reason to deny enforcement of the Award, *see* Opp. at 17-26.  The relevant facts on this last point are
further explained in the Second Declaration of Abby Cohen Smutny (filed herewith), ¶¶ 21-42.

*Assoc. (VO) Technostroyexport v. Int'l Development & Trade Services, Inc.*, 139 F.3d 908, 1998

U.S. App. LEXIS 5610 (2d Cir. 1998).  There, the parties had arbitrated their contract dispute

before the International Court of Commercial Arbitration of the Chamber of Commerce and

Industry of the Russian Federation in Moscow, and the arbitration tribunal issued awards of

almost $200 million in favor of the petitioner.  *See id.* at 980.  The respondent opposed

confirmation of the awards, arguing under Article V(2)(b) of the New York Convention that

enforcement would be contrary to United States public policy because the tribunal was corrupt.

*See id.* at 980-82.  Apparently, the respondent's interpreter had gathered "evidence" before the

proceeding that the tribunal and its officials were willing to accept bribes to fix the result of the

arbitration.  Although respondent was fully aware of this information from its interpreter, it

participated actively in the arbitration without ever mentioning the issue.  *See id.* at 981.

Recognizing "settled law" that parties could not attack qualifications of arbitrators on grounds

previously known but not raised in the arbitration hearing, the Second Circuit concluded that

petitioner had waived its challenge by remaining silent despite knowing information that might

indicate corruption in the tribunal.  *See id.* at 982.

Other courts likewise have found that respondents waived their challenges to arbitration

proceedings by failing to raise their objections with the tribunal.  *See, e.g., AO Techsnabexport v.

Globe Nuclear Services & Supply GNSS, Ltd.*, 404 Fed. Appx. 793, 798 (4th Cir. 2010) (party

waived argument by failing to raise it during arbitration proceedings); *Slaney v. Int'l Amateur

Athletic Federation*, 244 F.3d 580, 591 (7th Cir. 2001) ("Our judicial system is not meant to

provide a second bite at the apple for those who have sought adjudication of their disputes in

other forums and are not content with the resolution they have received."); *Europcar Italia v.

Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (party that fails to raise issue during

- 4 -

arbitration forfeits that issue) (citation omitted); *Chemical Overseas Holdings, Inc. v. Republica Oriental del Uruguay*, 371 F. Supp. 2d 400, 401 (S.D.N.Y. 2005) (issue forfeited if not raised in arbitration).

Here, the underlying arbitration proceedings lasted almost five years.  Throughout the course of the proceedings, Gold Reserve made clear that it was claiming damages on its own behalf.  *See* Second Decl. of Abby Cohen Smutny (filed herewith) at ¶¶ 3-7 (hereafter "Second Smutny Decl.").  In its initial Request for Arbitration, Gold Reserve referred to the fact that both Gold Reserve and its Venezuelan subsidiaries incurred loss and damage as a result of Venezuela's breach of the BIT, and submitted consents and waivers that permitted claims to be presented both for Gold Reserve's losses as well as those of its subsidiaries.  *See id.* ¶¶ 4-5; Ex. 22 ¶ 96 (requesting "an award . . .  of compensation to Gold Reserve and respectively to . . . [its subsidiaries], as appropriate, for all losses and damages suffered, in an amount to be elaborated and quantified in the course of this proceeding.").  And in Gold Reserve's first substantive submission, it presented its claim only on behalf of its own damages, and not those of its subsidiaries:

> As an enterprise duly constituted under the laws of the Yukon Territory, Canada that has made investments in Venezuela, Gold Reserve qualifies as an investor under Article I of the BIT.  Article XII of the BIT thus provides that Gold Reserve may submit its claims that measures taken and not taken by Venezuela breached the provisions of the BIT and that ***Gold Reserve has incurred loss and damage by reason of or arising out of those breaches***.

> ***Gold Reserve's losses*** entail, most prominently, the loss of the returns it stood to gain from the Brisas Project and the right to develop the promising Choco 5 property, the rights to which it enjoyed through its indirectly wholly-owned subsidiaries, [the Brisas Company] and GR Minerales El Choco, C.A. respectively.

> . . .

- 5 -

> The fact that the BIT also permits investors to bring claims regarding loss or damage suffered by an enterprise that the investor directly or indirectly owns or controls does not detract from ***the investor's right to bring claims regarding its own losses***.

*Id.* ¶ 6; Ex. 23 ¶¶ 364-67 (emphases added).

Consistent with this, Gold Reserve requested that the Tribunal award compensation to Gold Reserve on account of its own losses. *See id.* ¶¶ 6-7. This included the evidence presented by Gold Reserve's damages expert, which reflected the losses incurred by Gold Reserve. *See id.* ¶ 6 and n.9; Ex. 24 ¶¶ 7, 56, 60, 210. And, in its Reply brief in the arbitration, Gold Reserve reiterated that its claim was for compensation for the losses that it had incurred due to Venezuela's breach of the treaty. *See id.* ¶ 6; Ex. 25 ¶ 687. Finally, in its post-hearing brief, Gold Reserve expressly stated that "Gold Reserve's claims are not in regard to losses suffered by an enterprise that it owns or controls as contemplated by Article XII(9) of the BIT." *Id.* ¶ 7; Ex. 26 ¶ 83 n.199.

Venezuela thus was fully aware that Gold Reserve sought relief in the arbitration for its own losses. Venezuela now argues to the Court that the Tribunal should have awarded damages to Gold Reserve's subsidiary instead of to Gold Reserve itself. *See* Reply at 3-13. If these were valid arguments, Venezuela should have raised them during the arbitration proceedings, and offered any supporting factual and legal argument (including any expert testimony it wished to offer) to the arbitration Tribunal. It did not. It has therefore waived this argument.

Indeed, Venezuela submitted over 1,000 pages of briefing in support of its various arguments before the Tribunal, but only referenced the issue of which entity should be awarded damages in ***one footnote***. *See id.* ¶ 9; Ex. 27 ¶ 667 n.1510. Venezuela did not provide any factual or legal analysis or rely on any expert testimony in support of this conclusory and passing

statement.  *See id.*   Venezuela made an equally limited and oblique reference to this issue at the

arbitration hearing.  *See id.* ¶ 9 and n.13; Ex. 28.  Then, when the Tribunal pointedly asked the

import of this reference, Venezuela declined to request any action by the Tribunal on the very

issue for which it now seeks to invalidate the entire Award:

> ARBITRATOR WILLIAMS:  May I just ask a question.  What is the practical
> import of what you have just said about the award being to the affected
> enterprise?  Do you believe that that, A, is a matter of procedural significance
> and, B, a matter which affects Respondent?  How do you see it?
>
> DR. GOODMAN [Counsel for Respondent]:  We do see that it's just a matter in
> the Treaty, which we wanted to draw your attention to.

*Id.* ¶ 9 and n.14; Ex. 28.

Just as significantly, Venezuela abandoned this "enterprise damage" issue altogether.  At

the hearing, the Tribunal required the parties to identify in their post-hearing briefs all of the

questions they wanted the Tribunal to address in its award.  *See id.* ¶10.  As the President of the

Tribunal explained to the parties:  "I wouldn't like the Tribunal to go searching in the

documents, in the parties' submissions, for what questions have been really put to us, in order to

be able to respond.  Please make a certain point of the post-hearing brief a statement of: these are

my questions to the Tribunal."  *Id.* ¶ 10 and n.16; Ex. 29.  Gold Reserve followed this directive

and expressly asked the Tribunal to decide "[w]hether the measure of ***Claimant's loss*** is as set

forth in the expert reports of Brent Kaczmarek (Navigant)."  *Id.* ¶ 10; Ex. 31 ¶ 138(o) (emphasis

added). In its own post-hearing brief, however, Venezuela did ***not*** ask the Tribunal to address

whether any award would have to be made to Gold Reserve's subsidiaries rather than to Gold

Reserve itself, and did ***not*** offer any argument on this issue under Article XII(9) of the BIT.  *See*

*id.* ¶10; Ex. 30.  Then, in the post-award corrections procedure, Venezuela did not assert that the

Tribunal committed an error by awarding damages to Gold Reserve.  Thus, Venezuela

(correctly) abandoned this meritless argument. Putting aside the lack of merit to Venezuela's argument, it is highly disingenuous for it to fault the Tribunal for allegedly awarding damages to the "wrong" entity when Venezuela itself failed to put the Tribunal on adequate notice of its counter-argument. *Cf. Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) ("We need not consider cursory arguments made only in a footnote . . . .") (citation omitted).

Having failed to raise its Article XII(9) argument with the Tribunal, and thereafter abandoning the issue altogether, Venezuela waived any claim that the Tribunal should have awarded damages to Gold Reserve's subsidiary rather than Gold Reserve itself. Venezuela's attempt to inject this issue into this enforcement proceeding should thus be rejected.

## II.  VENEZUELA HAS NO VALID BASIS UNDER THE NEW YORK CONVENTION TO CONTEST THE DAMAGE AWARD TO GOLD RESERVE

Even if Venezuela's ill-founded argument that damages should have been awarded to Gold Reserve's subsidiary was not waived, it would not provide a basis under the New York Convention to refuse enforcement of the Award. In this respect, although Gold Reserve believes that the arguments and expert opinions that Venezuela offers in its Reply are entirely inapposite and can be disposed of without extensive analysis, in the interest of completion and to assist the Court in further understanding the various issues of international law raised (albeit unnecessarily) by Venezuela and its experts, Gold Reserve is submitting herewith responsive expert reports by Professor Andrea Bjorklund and Dr. Todd Weiler.

Venezuela argues that the Award should not be recognized under Article V(1)(c) of the Convention "because the Tribunal went beyond the submission to arbitration, which is defined by the BIT" by awarding damages to Gold Reserve rather than to its "enterprise." Reply at 4. Venezuela also urges the Court to deny recognition of the Award under Article V(2)(b) of the

Convention because the Tribunal's award of damages to Gold Reserve rather than the Brisas Company allegedly violates United States public policy. *Id.* at 11-13. These arguments are frivolous. Venezuela cites *no* court decision denying recognition of an arbitration award in which damages were awarded to an investor, rather than its enterprise. Nor does any such authority exist.

Venezuela's reliance on Article V(1)(c) of the Convention is entirely misplaced. This provision is "narrowly construed" and "allow[s] a party to attack an award predicted upon arbitration of a subject matter not within the agreement to submit to arbitration." *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974). Here, it was entirely within the Tribunal's authority under the BIT to determine whether Gold Reserve (itself) was injured by Venezuela's acts and, if so, what compensation was due to Gold Reserve (itself). These questions were a factual matter for the Tribunal to determine, and Venezuela does not argue otherwise. This is further explained by Professor Bjorklund and Dr. Weiler. *See* Bjorklund Rep. ¶¶ 6-10; 82-94; Weiler Rep. ¶¶ 18, 36-37. The fact that Venezuela disagrees with the Tribunal's conclusion does not mean that the Tribunal lacked jurisdiction to rule on the merits of this issue. *See Parsons & Whittemore Overseas Co.*, 508 F.2d at 977 ("Although the Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement.").[4]

---

[4] If this was a proper Article V(1)(c) issue – and it is not – the Tribunal's determination of its jurisdiction to decide the issue would be entitled to deference by this Court. *See* GR Opp. Br. (D.E. 22) at 7-8; *see also Chevron Corp. v. Republic of Ecuador*, No. 13-7103, 2015 U.S. App. LEXIS 13528, at *18 (D.C. Cir. Aug. 4, 2015) ("There was no need for the District Court to independently determine that Chevron's suits satisfied the BIT's parameters once it had concluded that the parties had delegated this task to the arbitrator.").

Venezuela's reliance on Article V(2)(b) as a hook for this argument is equally specious. The "public policy" interests implicated by Article V(2)(b) bear no resemblance to the purported U.S. "public policy" interests identified by Venezuela and its expert witnesses.[5]  As previously explained, *see* GR Opp. Br. at 26-27, the "public policy" defense to enforcement of international arbitral awards is narrowly construed, and "applies only when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's ***most basic notions of morality and justice***.'"  *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iraq v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011) (citations omitted) (emphasis added); *see also Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) ("It is noteworthy that in construing this provision the courts have been very careful not to stretch the compass of 'public policy.'").  Indeed, courts have repeatedly enforced arbitration awards in the face of "public policy" arguments, some of which raised potentially important policy interests. *See, e.g., Cubic Def. Sys., Inc.*, 665 F.3d at 1099-1100 (trade regulations with Iran did not outweigh strong federal policy in favor of recognizing foreign arbitral awards); *Steel Corp. of the Philippines v. Int'l Steel Servs., Inc.*, 354 Fed. Appx. 689, 694-95 (3d Cir. Nov. 19, 2009) (enforcing award against claim that enforcement would violate public policy against forum shopping); *BCB Holdings Ltd. v. Gov't of Belize*, No. 14-1123, 2015 U.S. Dist. LEXIS 81824, at *34-35 (D.D.C.  June 24, 2015) (U.S. policy against corruption abroad does not overcome emphatic federal policy in favor of arbitral dispute resolution); *Belize Social Development Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 43 (D.D.C. 2013) (same), *aff'd*, 2015 U.S. App. LEXIS 12531 (D.C. Cir. July 21, 2015); *Tamimi Global Co. Ltd. v. Kellogg Brown & Root LLC*, No. 14-11-

---

[5] Gold Reserve has in no way conceded that Venezuela raised a valid public policy defense to enforcement of the Award, as Venezuela suggests on page 11 of its Reply.

0585, 2011 U.S. Dist. LEXIS 50873, at * 11-12 (S.D. Tex. May 12, 2011) (public policy against paying and accepting bribes to obtain government contracts outweighed by "overriding strong federal policy favoring arbitration and enforcement of arbitration awards"); *see also Chevron Corp.*, 2015 U.S. App. LEXIS 13528, at *19 (rejecting Art. V(2)(b) argument and emphasizing the "'emphatic federal policy in favor of arbitral dispute resolution'") (citation omitted).

Tellingly, Venezuela cites not a single case holding that enforcement of treaties according to their terms constitutes the type of "public policy" covered by Article V(2)(b) of the New York Convention.  Venezuela's sole authority for this purported "public policy" is litigation positions taken by the United States government in certain NAFTA cases, none of which is authoritative.

Venezuela may disagree with the Tribunal's determination, but the losing party in arbitration cannot claim a "public policy" violation every time it disagrees with a Tribunal's interpretation or application of a treaty provision.  This is contrary to the goals of the Convention and the arbitration process overall.  *See Parsons & Whittemore*, 508 F.2d at 973 ("An expansive construction of this defense would vitiate the Convention's basic effort to remove preexisting obstacles to enforcement.") (citations omitted); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("Erroneous legal reasoning or misapplication of law is generally not a violation of public policy within the meaning of the New York Convention.") (citation omitted).  Most importantly, it would conflict outright with the "'emphatic federal policy in favor of arbitral dispute resolution.'"  *Chevron Corp.*, 2015 U.S. App. LEXIS 13528, at *20 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

The flaws in Venezuela's argument do not end there.  Venezuela claims that the Tribunal's award of damages to Gold Reserve rather than the Brisas Company violates a United States public policy in favor of enforcing treaties according to their terms, and that enforcement of the Award would be counter to the United States' interests in any future arbitrations where the United States is a party.  Reply at 11-13.  As a preliminary point, nothing in the Tribunal's award is contrary to the BIT, so enforcing the Award is entirely consistent with the purported interest identified by Venezuela.  More importantly, this is an improper application of the public policy defense.  "[E]quating 'national' policy with United States 'public' policy . . . misses the mark.  To read the public policy defense as a parochial device protective of national political interests would seriously undermine the Convention's utility."  *Parsons & Whittemore*, 508 F.2d at 974; *see also. Cubic Defense Systems, Inc.*, 665 F. 3d at 1100 ("An expression of national policy is not necessarily dispositive of the public policy issue under the Convention.") (citation omitted).

## III.   THE TRIBUNAL PROPERLY AWARDED DAMAGES TO GOLD RESERVE

Even if Venezuela had not waived its "damages to the wrong entity" argument, and even if this argument triggered a defense under the New York Convention (which it does not), it still would fail because the arbitration record clearly shows that Gold Reserve claimed damages on its own behalf (not for its Brisas subsidiary).  The Tribunal's award of damages to Gold Reserve was therefore required by the Canada-Venezuela BIT.

Venezuela posits that "[t]he relevant legal framework is not contested:  (1) the BIT distinguishes between, on the one hand, claims regarding injuries to investors and, on the other hand, claims for injuries to enterprises owned or controlled by investors; and (2) with respect to the latter, any damages must be awarded to the 'affected enterprise.'"  Reply at 4 (citing BIT, Article XII(1)-(2), (9)).  Although it is true that this "framework" is not contested, Venezuela's

entire argument only addresses the "latter" situation, *i.e.*, where investors claim for injuries to their enterprises.  The fundamental disconnect in this argument is that Gold Reserve pursued a claim for its own losses, as it was perfectly entitled to do under the BIT.  *See* Bjorklund Rep. ¶¶ 82-91; Weiler Rep. ¶¶ 20-22.  The Tribunal properly awarded damages on this basis.  *See* Bjorklund Rep. ¶¶ 92-97; 103; Weiler Rep. ¶¶ 32-38.

Article XII(1) of the BIT allows an investor (such as Gold Reserve) to assert a claim "that a measure taken or not taken by the [other] Contracting Party is in breach of [the BIT], and that the investor ***or*** an enterprise owned or controlled directly or indirectly by the investor has incurred loss or damage by reason of, or arising out of, that breach . . . ." (emphasis added).  Investors are thus given the option of submitting claims on their own behalf, on behalf of an enterprise owned or controlled directly or indirectly by the investor, or both.  *See* Bjorklund Rep. ¶¶ 88-91; Weiler Rep. ¶¶ 20-22.  In its initial Request for Arbitration, Gold Reserve requested an award of compensation both to itself and to its subsidiaries, as appropriate.  *See* Second Smutny Decl. ¶ 4; Ex. 22.  But because Venezuela's unlawful conduct effectively terminated the Brisas Company's operations in their entirety, Gold Reserve, beginning with its opening Memorial and thereafter, presented claims solely for its own losses.  *See id.* ¶¶ 5-7; Exs. 23-26.  Accordingly, it was Gold Reserve's burden during the arbitration to prove its own losses and the causal link between its losses and Venezuela's breach of the BIT.  Gold Reserve met this burden, and the Tribunal properly awarded compensation to Gold Reserve.

Contrary to Venezuela's argument, there was no basis for the Tribunal to award damages to the Brisas Company, because Gold Reserve did not assert a claim on behalf its enterprise.  The provision in Art. XII(9) of the BIT upon which Venezuela relies only requires that an award be made to an affected enterprise "[w]here an investor brings a claim under this Article regarding

loss or damage suffered **by an enterprise** the investor directly or indirectly owns or controls."

(Emphasis added.)  Gold Reserve presented no such claim.

The Tribunal's award of damages to Gold Reserve thus was entirely consistent with Gold

Reserve's claim and its offer of proof in the arbitration proceeding.  However, even if this

determination was incorrect, it goes directly to the merits and therefore is not subject to

challenge by Gold Reserve in this proceeding.  The Court may conduct only a limited and

deferential review of the Tribunal's decision.  *See Chevron Corp.*, 2015 U.S. App. LEXIS

13528, at *15 ("'[T]he [New York Convention] affords the district court little discretion in

refusing or deferring enforcement of foreign arbitral awards.'") (citing *Belize Soc. Dev. Ltd. v.

Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012)).  For all of these reasons, Venezuela's entire

argument, and its voluminous supporting expert reports, are nothing more than a waste of paper.

A.      **Venezuela's Tax Argument Is Specious**

In an effort to support its argument that the Award should have been made to the Brisas

Company, Venezuela warns that, if awards are not made to the affected enterprise, creditors'

rights, including the rights of tax authorities, could be harmed.  *See* Venezuela Reply at 5-6.[6]

Venezuela contends that such concerns are not "theoretical" here, because if the Award had been

made to the Brisas Company, it allegedly would have been subject to a 34% tax in Venezuela,

and the Brisas Company would have been required to pay a dividend to Gold Reserve de

---

[6] Venezuela relies on submissions made by the United States and Canada in other arbitration proceedings in support of its argument.  *See* Reply at 5 and n.5 (discussing U.S. submissions in *GAMI Investments*, *Pope & Talbot*, and *United Parcel Service*, and the Counter-Memorial of Canada in *United Parcel Service*).  These advocacy pieces, of course, are not authoritative.

Venezuela, which purportedly also would be taxed.  *See id.* at 6.[7]  Venezuela contends that

"[t]hese taxes were circumvented by the Tribunal's disregard for Article XII(9)."  *Id.*

This argument is specious.  Venezuela fails to inform the Court that the compensation

awarded to Gold Reserve was measured ***net of tax***, and thus took into account that the Brisas

Company would have had to pay 34% Venezuelan income tax.  *See* Second Smutny Decl. ¶¶ 12-

17; Exs. 24, 32, 33; Award ¶ 831.  As explained by Gold Reserve's damages expert during the

arbitration proceedings:

> In a DCF valuation the cash flows produced by the business is calculated after
> deducting all necessary expenses and taxes that must be paid in executing the
> business.  Valuation practitioners typically refer to this cash flow measure as 'free
> cash flow' as it represents the cash flow available to be paid to lenders or
> shareholders after all expenditures have been met.

Second Smutny Decl. ¶ 14; Ex. 24 ¶ 60.  Likewise, Venezuela's damages expert in the

arbitration proceeding acknowledged that Gold Reserve's damage calculation was made net of

tax.  *See id.* ¶ 15; Ex. 32 ¶¶ 30-31.  By adopting a damage award based on the DCF measure of

value, the Tribunal awarded damages to Gold Reserve that were assessed net of Venezuelan

taxes.  *See id.* ¶ 17; Award ¶ 831.  Therefore, no tax obligations were "circumvented" by the

Tribunal's award of damages to Gold Reserve.[8]

---

[7] Venezuela and its expert witnesses rely on statements by the *Mondev* tribunal with respect to NAFTA
Articles 1116 and 1117.  The *Mondev* tribunal, however, held that the measures at issue in that proceeding
did not violate the treaty, and therefore did not make any findings as to the losses alleged by the claimant.
And to the extent that any weight is given to an arbitral tribunal's *dicta*, it should be noted that the
tribunal acknowledged that NAFTA's provisions give investors a choice as to how to present their claims.
*See* Bjorklund Rep. ¶ 59 (discussing *Mondev v. United States* para. 82, in which it is stated:  "In the
Tribunal's view, it is certainly open to Mondev to show that it has suffered loss or damage by reason of
the decisions it complains of, even if loss or damage was also suffered by the enterprise itself, LPA."); *see
also* Weiler Rep. ¶¶ 18, 35.

[8] To the contrary, if Venezuela's current reasoning were to prevail, the damage award would have been
subject to ***double*** taxation—an improper windfall to Venezuela that would reward it for its unlawful acts.
*See* Second Smutny Decl. ¶ 17.

Moreover, although Venezuela assumes that it was deprived of tax revenue to which it was legally entitled, this is entirely speculative.  According to Venezuela's own proffered expert, any damage award to the Brisas Company would be subject to taxation only to the extent that it constituted net income after taking into account the massive losses incurred as a result of Venezuela's unlawful conduct.  *See* Garcia Montoya Report ¶ 14 ("As [the Brisas Company and Gold Reserve de Venezuela, C.A.] are considered taxpayers domiciled in this country, they are subject to the net profit system, which consists of the increases in assets calculated by subtracting from gross income the costs and deductions permitted under this law, without prejudice regarding the net profits which have their source within the country, with the adjustment for inflation established by this Law.").  Furthermore, the compensation awarded by the Tribunal reflected the fair market value of the investment, *see* Award ¶¶ 681-82, and Venezuela's expert acknowledges that damages intended to compensate a lost investment are not taxable.  *See* Garcia Montoya Report ¶¶ 19, 26.  Likewise, although Venezuela assumes that taxes would also be owed on dividends paid to Gold Reserve de Venezuela, C.A., *see* Reply at 6, its expert recognizes that dividends are not taxable when they are derived from income on which the payor itself was taxed.  *See* Garcia Montoya Report ¶ 35 ("The system for taxing dividends . . . consists of a proportional tax on dividends originating in net income, which is not exempt or exonerated, that has not been taxed by the income tax, of the payor exceeding his net taxed fiscal income . . .").

**IV.**   **A STAY OF ENFORCEMENT IS NOT WARRANTED, BUT IF A STAY IS GRANTED, VENEZUELA SHOULD BE ORDERED TO POST SUITABLE SECURITY**

Venezuela argues that this Court should follow the lead of the Court of Appeal in Luxembourg, which Venezuela says granted a "stay" of those proceedings pending conclusion of

the set aside proceedings in Paris.  *See* Reply at 19, 24.  Venezuela has its facts wrong.  As the

language quoted in Venezuela's brief actually states, the Luxembourg Court of Appeal stayed

"the proceedings on the appeal against the enforcement order."  Reply at 19 (citing Annex 10 to

July 15, 2015 Declaration of Thomas Bevilacqua)).  In other words, the Luxembourg Court of

Appeal ***did not*** stay execution of the Award.  *See* Decl. of François Kremer ¶ 11 (submitted

herewith).  Rather, as explained by Gold Reserve's Luxembourg counsel:

> [T]he Luxembourg Court of Appeal stayed <u>Venezuela's appeal</u> against the
> enforcement order issued by the Luxembourg District Court (*Tribunal
> d'arrondissement de Luxembourg* -which is the Luxembourg court of first
> instance), and therefore, following the order of the Chairman of the Luxembourg
> District Court dated 28 October [2014] (that has been appealed by <u>Venezuela</u>),
> Gold Reserve is entitled to take all conservatory measures against Venezuela in
> Luxembourg despite pending annulment proceedings before the Paris Court of
> Appeal and the Luxembourg Court Appeal.

Kremer Decl. ¶ 12.[9]  The status of the Luxembourg proceedings, therefore, do not support

Venezuela's position.  And, in any event, the more relevant point in the *Europcar* stay analysis is

the fact that the *Paris* court denied Venezuela's request for a stay of enforcement pending a

decision on Venezuela's annulment petition.  *See* Opp. Br. 38; Second Decl. of Christian

Dargham (submitted herewith) ¶¶ 10-20.[10]

    Finally, in the event a stay is granted, Venezuela contends that it should not be required

to post security, suggesting that "[w]here the respondent is a sovereign state, security should not

be required because there is little risk of non-payment."  Reply at 25.[11]  The only case cited by

---

[9] The year "2010" reference in the declaration is a typo.

[10] Venezuela's remaining arguments under the *Europcar* stay analysis are similarly misguided.  *See* Reply 20-24.  Venezuela continues to rely solely on supposition regarding the course of future enforcement efforts in the United States and the proceedings in Paris.

[11] Venezuela also suggests that this Court should follow the lead of the Court of Appeal in Luxembourg and not require Venezuela to post suitable security if the Court grants Venezuela's alternative motion to stay enforcement.  *See* Reply at 25.  The Luxembourg court, however, did not deny the request for

Venezuela in support of this broad proposition is *DRC, Inc. v. Rep. of Honduras*, 774 F. Supp. 2d 66, 76 (D.D.C. 2011), a decision that was subsequently vacated on other grounds (Venezuela neglects to note this in its brief). *See DRC, Inc. v. Rep. of Honduras*, 999 F. Supp. 2d 1 (D.D.C. 2012). And Venezuela has offered no facts or assurances to support its implicit argument that, in this case, there would be "little risk of non-payment." Quite the contrary; Venezuela's refusal to voluntarily comply with the binding award to date strongly suggests that there *is* risk of non-payment if enforcement is stayed. Venezuela's actions belie its words.

Nothing in Article VI of the New York Convention requires different or preferential treatment of sovereign entities in determining whether suitable security should be posted. Indeed, courts have recognized that Article VI allows them "to require sovereigns to post prejudgment security if they move to set aside or suspend an arbitration award . . . ." *Skandia America Reinsurance Corp. v. Caja Nacional de Ahorro y Seguro*, No. 96 Civ. 2301, 1997 U.S. Dist. LEXIS 7221, at *15-16 (S.D.N.Y. May 23, 1997) (ordering respondent, a purported instrumentality of the Argentinean government, to post pre-judgment security pursuant to New York Insurance Law § 1213(c)); *see also International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 399-400 (7th Cir. 2002) (finding court-ordered prejudgment deposit of security against an alleged government instrumentality to be "clearly appropriate" based, *inter alia*, on Article VI of the New York Convention).[12]

Thus, although Venezuela has not shown valid grounds for issuance of a stay in this matter, if a stay is ordered, Venezuela should be required to post security in the amount of the

---

security on the grounds that Venezuela was a sovereign state, *see* Second Bevilacqua Decl. Annex 10 at 7, and the court's ruling therefore has no bearing on the issue raised by Venezuela in this proceeding.

[12] Contrary to Venezuela's argument, the FSIA's provisions governing when and under what circumstances a creditor may enforce a judgment against a foreign sovereign support, rather than militates against, Venezuela posting adequate security here.

Award.  *See Skandia America Reinsurance Corp.*, 1997 U.S. Dist. LEXIS 7221, at *1;

*Caribbean Trading & Fidelity Corp. v. Nigerian Nat. Petroleum Corp.*, No. 90 Civ. 4169, 1990

U.S. Dist. LEXIS 17198, at *21-22 (S.D.N.Y. Dec. 18, 1990) (ordering Nigerian agency or

instrumentality to post security in the amount set forth in the arbitration award and demanded in

the petition to enforce).

## CONCLUSION

WHEREFORE, the Court should enter an order pursuant to 9 U.S.C. § 207 confirming

the Award against Venezuela, enter judgment as requested in Gold Reserve's Petition to

Confirm, including pre- and post-Award interest as determined by the Tribunal, award Gold

Reserve its costs and attorneys' fees in this proceeding, in an amount to be quantified, deny

Venezuela's motion for stay of enforcement, and award Gold Reserve such other and further

relief as the Court determines is just and proper.


Dated:  August 31, 2015                    Respectfully submitted,


                                           /s/ Matthew H. Kirtland
                                           Matthew H. Kirtland (D.C. Bar # 456006)
                                           matthew.kirtland@nortonrosefulbright.com
                                           Caroline M. Mew (D.C. Bar # 467354)
                                           caroline.mew@nortonrosefulbright.com
                                           NORTON ROSE FULBRIGHT US LLP
                                           799 9th Street, NW
                                           Washington, D.C. 20001-4501
                                           Telephone:  (202) 662-4659
                                           Facsimile:  (202) 662-4643

                                           *Attorneys for Petitioner Gold Reserve Inc.*