**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA**

|  |  |
|---|---|
| GOLD RESERVE INC., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> BOLIVARIAN REPUBLIC OF VENEZUELA, ) <br> ) <br> Respondent. ) | Civil Action No. 1:14-cv-02014-JEB |

**RESPONDENT'S SUR-SURREPLY IN SUPPORT OF ITS MOTION TO DISMISS
PETITION AND DENY RECOGNITION OF ARBITRAL AWARD
(ORAL HEARING REQUESTED)**

Venezuela submits this sur-surreply to respond to the erroneous assertion, raised for the first time in Gold Reserve's surreply, that Venezuela waived its argument that the Award cannot be recognized because it was directed to the wrong entity in contravention of Article XII(9) of the bilateral investment treaty between Venezuela and Canada (the "BIT," D.E. 2-5).

Gold Reserve's waiver argument has no merit. Venezuela expressly raised the requirements of Article XII(9) in both its pre-hearing written submission to the Tribunal and during the oral hearing. Having repeatedly called the Tribunal's attention to the treaty's mandate that the Award must be directed only to the affected enterprise (the Brisas Company), Venezuela plainly did not waive the argument that the Tribunal contravened the treaty when it disregarded that requirement by directing the Award to Gold Reserve.

**I.    Venezuela Repeatedly Raised The Requirements Of Article XII(9)**

Gold Reserve's waiver argument is based on an incomplete summary of the arguments made by Venezuela. In fact, Venezuela took all necessary steps to inform the Tribunal that Article XII(9) required the Tribunal to make any damages award to the Brisas Company.

Gold Reserve began the arbitration by submitting a Request for Arbitration that expressly requested "an award of compensation" to "Gold Reserve" *and* "Compañia Aurífera Brisas del Cuyuni, C.A. [*i.e.*, the Brisas Company], for all losses and damages suffered, in an amount to be elaborated and quantified in the course of this proceeding." D.E. 2-6 ¶ 96. Gold Reserve's Request expressly referred to Article XII of the BIT concerning claims brought by an investor regarding loss or damage suffered by an enterprise that it owns or controls directly or indirectly. *Id.* ¶¶ 84, 89. In addition, and as also required by Article XII, Gold Reserve attached to the Request for Arbitration a consent and waiver signed by each of its affected subsidiaries in which each agreed to submit the dispute concerning the harm suffered by it to arbitration and to waive its rights to seek relief through other courts, tribunals, or dispute resolution procedures. *Id.* at 29 n.20. During the subsequent two years of pre-hearing briefing, Gold Reserve continued to assert claims both on its own behalf and on behalf of the Brisas Company. While Gold Reserve states that its pre-hearing submissions indicated that it was "claiming damages on its own behalf," that assertion and the citation to those submissions are misleading because they do *not* say that Gold Reserve abandoned the claims it brought on behalf of its subsidiaries. *See* Surreply at 5–6.

Venezuela, in its pre-hearing submissions, vigorously denied that any damages were owed to Gold Reserve or any of its subsidiaries, but also informed the Tribunal of the import of Article XII(9) of the BIT. Its Rejoinder on Jurisdiction and Merits discussed the hypothetical scenario of "any positive damages award to Claimant," and made clear that "pursuant to Article XII(9) of the Venezuela-Canada BIT, any award would have to be made to Compañía Aurifera Brisas del Cuyuní, C.A. and GR Minerales El Choco, C.A." D.E. 35-7 at 398 n.1510.

When the Tribunal later held oral hearing on the merits, Venezuela again raised Article XII(9)'s requirement that any damages had to be awarded to Gold Reserve's Venezuelan

subsidiary.  Gold Reserve self-servingly tries to characterize this as a "limited and oblique reference." Surreply at 7.  But tellingly, Gold Reserve does *not* quote the relevant text, which belies that characterization.  Venezuela, referring to the argument it made in its Rejoinder that "positive damages" could only be awarded to the Venezuelan subsidiaries, stated:

> [S]hould the Tribunal ever regretfully get to the point where they would be making an award of damages, as we have pointed out in, I think, our Rejoinder-- and I don't have the citation here--is that mining rights certainly were held by-- mining rights were held by the Venezuelan company. And the Article IX of the last--very last paragraph of the Treaty says that where an investor brings a claim under this article regarding loss or damage suffered by an enterprise the investor directly or indirectly owns or controls, any award shall be made to the affected enterprise. I just draw that to your attention, should the--should that occasion ever arise. But, again, even that clause does not relate to the actual definition that we've drawn your attention to of "investor."

D.E. 35-8 at 1200:13–1201:8.  The following exchange then occurred:

> ARBITRATOR WILLIAMS: May I just ask a question. What is the practical import of what you have just said about the award being to the affected enterprise? Do you believe that, A, is a matter of procedural significance and, B, a matter which affects Respondent? How do you see it?
>
> DR. GOODMAN: We do see that it's just a matter in the Treaty, which we wanted to draw your attention to.
>
> ARBITRATOR WILLIAMS: Right. Thank you.

*Id.* at 1201:14–1202:2.[1]

Gold Reserve accuses Venezuela of "declin[ing] to request any action from the Tribunal" in response to the Tribunal's question.  Surreply at 7.  That assertion mischaracterizes this exchange.  At the time, the Tribunal had not made any ruling on liability, nor had it indicated which, if any, entity would recover damages, and Venezuela contended that no damages were warranted to any entity.  There was no action for Venezuela to request.  Rather, Venezuela

---

[1] Significantly, Gold Reserve's citation to the hearing transcript in its surreply does not indicate that Gold Reserve made any attempt to rebut Venezuela's statement regarding the BIT's requirements.

reminded the Tribunal that, if it did award damages, it was required by "the Treaty"—that is, the Tribunal's sole source of authority—to award damages to the affected subsidiaries alone.

Following the oral hearing, the Tribunal ordered simultaneous post-hearing briefs. Gold Reserve, in its post-hearing brief, indicated for the first time that it was dropping the claims on behalf of its subsidiaries, writing in a footnote: "Gold Reserve's claims are not in regard to losses suffered by an enterprise that it owns or controls as contemplated by Article XII(9) of the" BIT. D.E. 35-6 at 35 n.199. This decision followed voluminous pre-hearing submissions and a full oral hearing, throughout which Gold Reserve had always maintained claims on behalf of its subsidiaries. Since the abandonment occurred in the simultaneously-filed post-hearing brief, Venezuela had no right to submit a response.[2] Nor can it seriously be suggested that Venezuela waived the argument by not responding to a footnote.

Gold Reserve argues that Venezuela, in its post-hearing brief, "abandoned the issue" by not asking the Tribunal to address whether an award would have to be made to Gold Reserve's subsidiaries. Surreply at 7. As shown, however, Venezuela had already directed the Tribunal's attention to the requirements of Article XII(9) and identified that mandate as originating from the BIT itself. The Tribunal neither suggested that it needed guidance from the parties as to whether it had to comply with the BIT's requirements nor indicated that it intended to disregard them. Its failure to comply with Article XII(9) only materialized once the Award was rendered, by which time there was no longer an opportunity for Venezuela to address the issue.

In that regard, Gold Reserve is wrong to assert that Venezuela should have raised the Article XII(9) error in the post-award corrections procedure. Surreply at 7. That procedure is

---

[2] The Tribunal requested additional briefing on certain specified issues, but the briefing was limited to those issues. The consequences of Gold Reserve's dropping of claims on behalf of its subsidiaries was not one of them.

limited to "a correction in the award of any clerical, arithmetical, or similar errors." *See* ICSID Additional Facility Arbitration Rules at 56(1).  The Tribunal's award of damages to the wrong corporate entity is not an error of a "clerical, arithmetical, or similar" nature.[3]

## II.     Gold Reserve Has Provided No Legal Authority Supporting Its Waiver Argument

Since Venezuela did, in fact, raise the Article XII(9) argument during the arbitration, the cases relied upon by Gold Reserve provide no support for the waiver argument.  For instance, in *AAOT Foreign Economic Assoc. (VO) Technostroyexport v. Int'l Development & Trade Services, Inc.*, 139 F.3d 980 (2d Cir. 1998), the party objecting to the arbitral award was found to have waived the argument that the arbitrators were corrupt because it had "remained silent" about this issue during the arbitration even though it possessed evidence of corruption.  Likewise, in *Brotherhood of R. Trainmen v. Chicago, Milwaukee, St. Paul & Pac. Railroad Co.*, 380 F.2d 605, 609 (D.C. Cir. 1967), the party objecting to the arbitration award attempted to contest the arbitral procedures after having purposely refused to participate in the arbitration.[4]

Venezuela, by contrast, vigorously defended itself in the arbitration and repeatedly raised the Article XII(9) issue.  It raised the issue in its pre-hearing written submissions.  It raised the issue again in its closing statement at the oral hearing.  The Tribunal then disregarded the BIT's requirements and awarded damages to Gold Reserve.  That violation of the BIT (among other reasons) requires the Award to be set aside, as Venezuela is arguing in Paris, and prevents its recognition under the New York Convention, as explained in Venezuela's motion and reply.

---

[3] Indeed, Gold Reserve's opposition criticizes Venezuela for what it characterizes as "improperly" challenging the substance of the ruling on damages "under the guise of a motion for correction."  D.E. 22 at 25–26.

[4] *See also*, *e.g.*, *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS*, 404 Fed. Appx. 793, 798 (4th Cir. 2010) ("Globe did not raise any objection during the arbitration proceedings about its inability to cross-examine"); *Tahan v. Hodgson*, 662 F.2d 867 (D.C. Cir. 1981) (defendant raised arguments not advanced in the Israeli court).

Dated: October 2, 2015

Respectfully submitted,

BOLIVARIAN REPUBLIC OF VENEZUELA

By its attorneys,

 /s/ *Lawrence H. Martin*
Lawrence H. Martin (D.C. Bar # 476639)
lmartin@foleyhoag.com
Janis H. Brennan (D.C. Bar # 412100)
jbrennan@foleyhoag.com
FOLEY HOAG LLP
1717 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 232-1200
Facsimile:  (202) 785-6687

Andrew B. Loewenstein (admitted *pro hac vice*)
aloewens@foleyhoag.com
Richard G. Baldwin (admitted *pro hac vice*)
rbaldwin@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Telephone: (617) 832-1000
Facsimile:  (617) 832-7000

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as unregistered participants on October 2, 2015.

 /s/ *Lawrence H. Martin*
Lawrence H. Martin